UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CAROLEE ANN ROE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case no. 4:16-CV-00960 |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Deputy Commissioner of Operations, | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Plaintiff Carolee Ann Roe seeks review of the decision of Defendant Nancy Berryhill, Deputy Commissioner of Operations, Social Security Administration ("SSA"), denying her application for disability insurance benefits under the Social Security Act. (ECF No. 18) Because the Court finds that substantial evidence supports the decision to deny benefits for the period in question, the Court affirms the denial of Plaintiff's application.

### *I.    Background and Procedural History*

Plaintiff filed an application for disability insurance benefits alleging she was disabled as of March 15, 2014 as a result of: knee pain, back pain, diabetes, hypertension, high cholesterol, asthma, depression, migraines, severe anxiety, insomnia, and gastroesophageal reflux disease. (Tr. 156-57, 184) The SSA denied Plaintiff's claims, and Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). (Tr. 104-05) The SSA granted Plaintiff's request for review, and an ALJ conducted a hearing. (Tr. 39-83)

In his decision, the ALJ determined that Plaintiff "was not under a disability, as defined in the Social Security Act, from March 15, 2014, through the date of this decision." (Tr. 30

(citing 20 C.F.R. 404.1520(g))) Plaintiff requested review of the ALJ's decision and submitted additional medical evidence, including opinion evidence from her treating psychologist, to the SSA Appeals Council ("Appeals Council"). The Appeals Council denied review on April 19, 2016. (Tr. 1-6) Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as the SSA's final decision. Sims v. Apfel, 530 U.S. 103, 106-07 (2000) (citing 20 C.F.R. §§ 404.900(a)(4)-(5), 404.955, 404.981, and 422.210(a)).

## II. Evidence Before the ALJ[1]

*A. Relevant Testimony at Hearing*

Plaintiff, then forty-four years of age, appeared with counsel at the administrative hearing on December 10, 2015. (Tr. 39) Plaintiff testified that she previously worked as a pharmacy technician and cashier at CVS, and had stocked shelves and worked a cash register at the Dollar Store. (Tr. 47) Plaintiff stated that she had been unable to work since March 15, 2014, due to depression, post-traumatic stress disorder (PTSD), anxiety, and insomnia, as well as various physical impairments. (Tr. 45-46)

Regarding her mental health, Plaintiff stated that she struggled with panic and anxiety when operating the cash register at the Dollar Store. (Tr. 47) Plaintiff also claimed her memory "started going away" and that she had obtained outpatient psychological care in January 2014 after her husband told her that "[h]e wanted an open marriage." (Tr. 54) Plaintiff cited memory problems, difficulty with coworkers, and panic attacks as mental impairments affecting her ability to work. (Tr. 59-60) Plaintiff further stated that she suffered from anxiety attacks "three

---

[1] Because Plaintiff challenges Defendant's assessment of her mental residual functional capacity, the Court limits its discussion to testimony and records relating to her mental health and mental health treatment.

times a month" and that distracting herself by playing the video game *The Sims 3* "work[ed] every time" to alleviate her anxiety. (Tr. 61-62)

A vocational expert testified that a person of Plaintiff's age, education, and work experience who was limited to unskilled work involving simple repetitive tasks could not perform Plaintiff's past relevant work as a pharmacy technician. (Tr. 29, 78) However, such person could perform the jobs of semiconductor assembler, wire wrapper, and optical lens inserter. (Tr. 30, 79) When the ALJ hypothesized that the person would be "off task more than 20 percent of the time," the vocational expert testified that such a person would not be able to sustain employment in the national economy. (Tr. 79) Finally, if the person needed to lie down "during the workday on average three times a day for up to one hour," the vocational expert stated the person would not be able to sustain employment. (Tr. 80)

B.   *Relevant Medical Records*

In 2013, Plaintiff began counseling with Karen Uptegrove-Ryan, M.S., a licensed clinical psychologist. Plaintiff reported symptoms of "poor sleep" and "sadness." Ms. Uptegrove-Ryan recommended that Plaintiff "spend time with friends," "write and paint," and return in two weeks. (Tr. 334) Plaintiff reported a "depressed mood" at a subsequent meeting. (Id.)

In January 2014, Ms. Uptegrove-Ryan noted that Plaintiff showed "anxiety and PTSD symptoms" and that Plaintiff reported "poor sleep but feeling happier and less anxious." (Id.) At the end of January, Ms. Uptegrove-Ryan noted that Plaintiff was "sad of affect and reported that her husband wants a divorce," and in early February, Ms. Uptegrove-Ryan noted that Plaintiff was "fairly bright of affect but becomes tearful over possible loss of cat in divorce." (Tr. 335)

At Plaintiff's sessions with Ms. Uptegrove-Ryan in late February and mid-March, Ms. Uptegrove-Ryan observed Plaintiff was "fairly bright of affect." (Tr. 225, 336) At the end of

March, Ms. Uptegrove-Ryan noted: "Client on the verge of tears x 2 due to loss of job," "[c]lient reports plan to get another job," and "no depression reported." (Tr. 336) In May, Plaintiff reported feelings of stress due to "husband's behavior and finances." (Tr. 336) Ms. Uptegrove-Ryan observed Plaintiff was "sad and at times angry." (Tr. 336) In June, Ms. Uptegrove noted "no depressive symptoms reported," and, in July, noted "mood stable." (Tr. 336-37) In late July, Ms. Uptegrove-Ryan observed Plaintiff to be "fairly bright of affect" and wrote that "husband created alot [sic] of stress for her but coping fairly well." (Tr. 337)

After a nine-month hiatus, Plaintiff resumed therapy with Ms. Uptegrove-Ryan in May 2015. (See Tr. 54, 337) During this session, Plaintiff reported being "somewhat agitated about husband's behavior." (Tr. 337) In August, September, and October, Ms. Uptegrove-Ryan noted that Plaintiff was "fairly bright of affect" and denied depressive symptoms. (Tr. 337-39) In November, Ms. Uptegrove-Ryan wrote, "Client anxious and reports that she will have her utilities turned off in one week if she can't pay her bill." (Tr. 339) In mid-November, Ms Uptegrove-Ryan observed, "Client reports some depressed mood…but reports feeling like things are somewhat better." (Tr. 339) In December, Ms. Uptegrove-Ryan noted, "Client tearful at times—reported [d]epression and anxiety. Client reported struggling with depression and anxiety and feels unable to work due to panic attacks." (Tr. 339)

In February 2014, Plaintiff visited Dr. Shahbaz Khan, M.D., seeking treatment for PTSD and Major Depressive Disorder ("MDD"). Dr. Khan noted Plaintiff's "mild apprehension," anxious mood, good eye contact and grooming, cooperative behavior, and soft speech. (Tr. 263) Dr. Khan further noted Plaintiff was oriented to time, place, person, and situation; showed fair attentiveness and concentration; demonstrated a six digit span; and could recall three out of three objects after a five minute span. (Id.) Dr. Khan prescribed Trazodone. (Tr. 264)

4

Plaintiff returned to Dr. Khan's office in late April and July. At the April appointment, Dr. Khan observed tense posture and an anxious and depressed mood. (Tr. 261) In response, Dr. Khan increased Plaintiff's Trazodone and prescribed Zoloft, Buspar, and Vistaril. (Tr. 262) At the July appointment, Dr. Khan observed the same signals as he observed during Plaintiff's previous visit, except he reported Plaintiff's mood to be anxious and not depressed. (Tr. 293) Dr. Khan continued Plaintiff's Trazodone, Zoloft, Buspar, and Vistaril prescriptions. (Tr. 294)

In September 2014, Martin Isenberg, Ph.D. reviewed Plaintiff's medical records and completed a psychiatric review technique. (Tr. 89-90). Dr. Isenberg diagnosed Plaintiff with affective and anxiety-related disorders, which, he opined, mildly restricted Plaintiff's activities of daily living, social functioning, and concentration, persistence, and pace. (Tr. 89) Dr. Isenberg wrote: "[Plaintiff's] mental status data looks mostly normal. [Plaintiff's] ADLs are not significantly limited by psychological factors. Moreover, she is currently working as a cashier 25 hours per week." (Id.)

In November 2015, Jennifer Brown, APRN of Comprehensive Mental Health Services, Inc. ("CMHS") completed an initial assessment for Plaintiff. Plaintiff reported "social anxiety, depression, insomnia, and appetite disturbance," but "denie[d] current thoughts of suicide, plans or intent." (Tr. 299) Plaintiff explained that she had stopped taking Zoloft nine months earlier due to lack of insurance and her primary concern was obtaining "medication services." (Tr. 297, 306) Ms. Brown completed a "SNAP" assessment, which revealed that Plaintiff was "able to learn and practice new ways of thinking and behaving." (Tr. 306)

At a subsequent appointment, Ms. Brown noted that Plaintiff suffered from "mood swings, depression, insomnia, [and] anxiety," and that Plaintiff's "[r]esponse to medication has been partial to good." (Tr. 309) Ms. Brown observed that Plaintiff had a neat appearance, normal

5

speech, "linear and goal directed" thought content, good attention and behavior, euthymic mood, congruent affect, fair reliability, fair concentration, and intact memory. (Tr. 310) Plaintiff denied hallucinations, suicidal ideation, homicidal ideation, and delusion. (Id.) Ms. Brown prescribed Trazodone, Vistaril, Buspar, and Cymbalta. (Tr. 312)

### *III.    Standards for Determining Disability Under the Act*

To obtain disability benefits under the Act, a claimant must demonstrate that he or she suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Act defines disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months." 20 C.F.R. § 404.1505(a). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. A claimant must show that he or she: (1) is not engaged in substantial gainful activity; (2) has a severe impairment or combination of impairments which significantly limits his or her physical or mental ability to do basic work activities or (3) has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1; (4) is unable to return to his or her past relevant work; and (5) the impairments prevent him or her from doing any other work. See 20 C.F.R. § 404.1520.

## IV.     The ALJ's Decision

The ALJ applied the five-step evaluation process and found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of March 15, 2014. The ALJ concluded that Plaintiff had the severe mental impairments of: "insomnia; major depressive disorder; anxiety disorder; and post-traumatic stress disorder." (Tr. 17)

After reviewing the testimony and medical records, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause symptoms of the nature alleged by the claimant," but Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible[.]" (Tr. 21). The ALJ determined that Plaintiff had the residual functional capacity (RFC) to perform sedentary work with the following nonexertional limitations: "unskilled work involving simple, repetitive tasks," "occasional interaction with co-workers," and "no significant interaction with the public in the performance of job duties." (Tr. 20)

In formulating Plaintiff's RFC, the ALJ gave "[p]artial weight" to Dr. Isenberg's medical opinion. (Tr. 26) The ALJ explained that "the record as a whole … supported a finding that the claimant had moderate difficulties maintaining social functioning and moderate difficulties maintaining concentration, persistence or pace." (Id.) The ALJ assigned "little weight" to Ms. Brown's opinion because she "was not an acceptable medical source, her opinion was formed without first reviewing the claimant's medical file, and her opinion was subjective." (Id.). The ALJ deemed it significant that Plaintiff "retained a high level of daily activities and independence," "had substantial gainful activity through 2013," and showed "no evidence of a dramatic deterioration of her health since that time." (Tr. 24-25).

Based on the vocational expert's testimony, the ALJ determined that Plaintiff was unable to perform past relevant work, but found a significant number of jobs existed in the national economy for a person with Plaintiff's RFC. (Tr. 28-29). The ALJ therefore concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from March 15, 2014, through the date of this decision[.]" (Tr. 30)

## V. Appeal to the SSA Appeals Council

Plaintiff requested review of the ALJ's decision and submitted additional medical evidence to the Appeals Council. The evidence submitted to the Appeals Council consisted of: Ms. Uptegrove-Ryan's progress notes from October 22, 2015 through February 11, 2016;[2] a letter from Ms. Uptegrove-Ryan regarding Plaintiff's mental health; and a mental medical source statement (MSS), completed by Ms. Uptegrove-Ryan. (Tr. 4)

Ms. Uptegrove-Ryan's January treatment notes revealed that Plaintiff reported "continual anxiety," depression, and poor sleep. In February, Plaintiff reported a "depressed mood and anxiety" but "no suicidal thoughts." (Tr. 341) Ms. Uptegrove-Ryan's notes from January 28 and February 11 reflect that Plaintiff was upset by the ALJ's decision and concerned about her appeal. (Id.)

Ms. Uptegrove-Ryan's letter, addressed "To Whom It May Concern," stated that Plaintiff suffered depression, anxiety, suicidal thoughts, and post-traumatic stress due to abuse. (Tr. 344) Ms. Uptegrove-Ryan also noted that Plaintiff "reported lack of concentration, memory loss, and hypervigilance around others," and she opined that Plaintiff "would have great difficulty functioning successfully in a job." (Id.)

---

[2] Ms. Uptegrove-Ryan's notes from October 22, 2015 through December 3, 2015 were in the record before the ALJ. Her notes from sessions on December 17 and 30, 2015, January 14 and 28, 2016, and February 11, 2016 were new to the record.

In the MSS, Ms. Uptegrove-Ryan stated that she treated Plaintiff every two weeks since November 2013. (Tr. 346) Ms. Uptegrove-Ryan stated that Plaintiff suffered from: anhedonia, sleep and appetite disturbance, decreased energy, difficulty thinking or concentrating, easy distractibility, emotional withdrawal or isolation, generalized persistent anxiety, memory impairment, mood disturbance, "oddities of thought, perception, speech or behavior," and persistent irrational fear. (Tr. 347) Ms. Uptegrove-Ryan assessed Plaintiff's limitations in various mental activities and opined that Plaintiff was extremely limited in three areas, markedly limited in thirteen areas, and moderately limited in four areas. (Tr. 349-50) She noted that Plaintiff was able to "manage benefits in [her] own best interest[.]" (Tr. 351)

The Appeals Council issued a notice denying Plaintiff's request for review in April of 2016. (Tr. 1-6) In the notice, the Appeals Council specifically identified each additional exhibit received and confirmed that it added the new evidence to the record. (Tr. 5) The Appeals Council explained that it considered Plaintiff's new evidence in determining whether the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record[,]" and it found that "this information does not provide a basis for changing the [ALJs] decision." (Tr. 2).

## VI.  Standard for Judicial Review

A court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g); see also Jones v. Astrue, 619 F.3d 963, 968 (8th Cir. 2010). "Substantial evidence is 'less than a preponderance, but enough that a reasonable mind would find it adequate to support a conclusion.'" Combs v. Berryhill, 878 F.3d 642, 646 (8th Cir. 2017) (quoting Brown v. Colvin, 825 F.3d 936, 939 (8th Cir. 2016)). In determining whether the evidence is substantial, a court considers evidence that both supports and detracts from the Commissioner's decision. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). However, as long as substantial evidence

exists in the record to support the Commissioner's decision, a court may not reverse merely because there is also substantial evidence detracting from the decision, or because it would have ruled otherwise. Cline v. Colvin, 771 F.3d 1098, 1102 (8th Cir. 2014); see also Andrews v. Colvin, 791 F.3d 923, 928 (8th Cir. 2015). A court "do[es] not reweigh the evidence presented to the ALJ and defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reason and substantial evidence." Renstrom v. Astrue, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006)).

"If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Partee v. Astrue, 638 F.3d 860, 863 (8th Cir. 2011) (quoting Goff v. Barnhart, 421 F.3d 785, 789 (8th Cir. 2005)). The Eighth Circuit has repeatedly held that a court should "defer heavily to the findings and conclusions" of the Social Security Administration. Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010); Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001).

## VII. *Discussion*

Plaintiff claims the Appeals Council failed to properly consider and weigh the new evidence from Ms. Uptegrove-Ryan when it denied Plaintiff's request for review of the ALJ's decision. (ECF No. 18) In response, Defendant asserts that: (1) the Appeals Council was not required to articulate its reasons for denying review; and (2) the new evidence did not constitute a basis for remand. (ECF No. 23).

The Appeals Council must consider "new and material evidence" that "relates to the period on or before the date of the [ALJ] hearing decision." 20 C.F.R. §§ 404.970(b). "To be

'new,' evidence must be more than merely cumulative of other evidence in the record." Lamp v. Astrue, 531 F.3d 629, 632 (8th Cir. 2008) (quoting Bergmann v. Apfel, 207 F.3d 1065, 1069 (8th Cir. 2000)). Additional evidence is "material" if it is "relevant to claimant's condition for the time period for which benefits were denied." Lamp, 531 F.3d at 632 (quoting Bergmann, 207 F.3d at 1069). New and material evidence submitted to the Appeals Council that relates to the period before the date of the ALJ's decision becomes part of the administrative record. Davidson v. Astrue, 501 F.3d 987, 990 (8th Cir. 2007).

"Where uncertainty exists as to whether the Appeals Council considered new and material evidence, remand is appropriate for an ALJ to consider such evidence." Holden v. Astrue, No. 4:10-CV-742-RWS(FRB), 2011 WL 2730914, at *33 (E.D. Mo. June 15, 2011) (citing Lamp, 531 F.3d at 633). However, uncertainty does not exist where the Appeals Council receives the evidence into the record and acknowledges each piece of evidence. See, e.g., Girshner v. Berryhill, 2017 WL 2859930, at *7 (W.D. Mo. 2017) (Appeals Council sufficiently considered evidence when it listed the exhibits in its attached exhibit list); Holden, 2011 WL 2730914, at *33 (same). Where the Appeals Council considered new evidence but denied review, a court must determine whether substantial evidence on the record as a whole, including the new evidence, supported the ALJ's decision. Davidson, 501 F.3d at 990. See also Burrage v. Colvin, No. 4:13-CV- 1421-SNLJ(NCC), 2014 WL 4627194, at *14-15 (E.D. Mo. Sept. 15, 2014). Even if the new evidence is substantial and supports a contrary decision, the Court may not reverse the ALJ's decision if it is supported by substantial evidence. Bergmann, 207 F.3d at 1068.

Plaintiff contends that, because the Appeals Council did not describe the weight given to the new evidence, there is uncertainty as to whether the Appeals Council considered the evidence. In response, the SSA contends that the Appeals Council specifically stated that "we

11

considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council" and there is no requirement that the Appeals Council articulate its reasons for denying review. (Tr. 2, 4-5); 20 C.F.R. § 404.970(b); see also Ridings v. Apfel, 76 F.Supp. 2d 707, 709 (W.D. Va. 1999), Bowen v. Colvin, No. 4:13CV2067 HEA, 2015 WL 249456 (E.D. Mo. Jan. 19, 2015). We agree with the SSA. The record shows that the Appeals Council identified: the progress notes from October 22, 2015 through February 11, 2016, labeled Exhibit 10F; the February 12, 2016 letter from Ms. Uptegrove-Ryan, labeled Exhibit 11F; and the February 13, 2016 MSS from Ms. Uptegrove Ryan, labeled Exhibit 12F. (Tr. 4) The Appeals Council clearly stated that it "considered. . . the additional evidence listed on the enclosed Order of Appeals Council" and explained that "this information does not provide a basis for changing the Administrative Law Judge's decision." (Tr. 2) Therefore, the Court finds that the Appeals Council sufficiently considered the new evidence in its denial of review.[3]

In regard to the new letter and MSS, Plaintiff contends that, because Ms. Uptegrove-Ryan was a treating source,[4] her opinion was entitled to controlling weight. Plaintiff further suggests that, if the ALJ had the opportunity to review the newly submitted evidence from Ms. Uptegrove-Ryan, he would likely have reached a different mental RFC determination. In response, the SSA contends that the new letter and MMS do not require controlling weight

---

[3] As to Plaintiff's claim that the Appeals Council erred in failing to explain the weight given to Ms. Uptegrove-Ryan's medical opinion, the Court notes that the SSA regulations do not require such explanation. Strother v. Berryhill, 2017 WL 4163924, at *9 (E.D. Mo. Sept. 20, 2017) (citing 20 C.F.R. § 404.970(b)) ("there is no requirement that the Appeals Council articulate its reasons for denying review."). The Eighth Circuit has held that any argument that the Appeals Council must articulate its own assessment of additional evidence "misconstrues the function of the Appeals Council under the [SSA] regulations." Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir. 1992).

[4] Licensed psychologists are "acceptable medical sources" under the SSA regulations. 20 C.F.R. § 404.1513(a)(2). Plaintiff's contention that Ms. Uptegrove-Ryan is a licensed psychologist and an acceptable medical source is undisputed by the SSA. In fact, the SSA refers to Ms. Uptegrove-Ryan as "Plaintiff's treating licensed psychologist" in their brief. (ECF No. 23, 5).

because "the evidence does not support the disabling marked and extreme levels of limitations set forth by Ms. Uptegrove [sic]." (ECF No. 23, at 7)

Although a treating source's opinion "is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." Pirtle v. Astrue, 479 F.3d 931, 934 (8th Cir. 2007) (quoting Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001)). "For a treating [source's] opinion to have controlling weight, it must be supported by medically acceptable laboratory and diagnostic techniques and it must not be 'inconsistent with the other substantial evidence in [the] case record.'" Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006) (quoting 20 C.F.R. § 404.1527(d)(2)). A treating source's "own inconsistency may also undermine [her] opinion and diminish or eliminate the weight given [her] opinions." Id. (citing Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000)).

The Court finds that Ms. Uptegrove-Ryan's medical opinion was not entitled to controlling weight. In the MSS, Ms. Uptegrove-Ryan's MSS opined that Plaintiff was either markedly or extremely limited in almost every area of mental function and social interaction. However, her treatment notes, which the ALJ reviewed and discussed in his decision, revealed that Plaintiff often reported improvements in her mood and anxiety. In fact, Ms. Uptegrove-Ryan observed that Plaintiff was "fairly bright of affect" at four sessions in 2014 and five sessions in 2015. Such inconsistencies provide sufficient reason to give Ms. Uptegrove-Ryan's opinion less-than-controlling weight.

In regard to Ms. Uptegrove-Ryan's opinion that Plaintiff "would have great difficulty functioning successfully in a job," it is well-established that a treating source's opinion that a claimant is disabled or unable to work is not entitled to deference. House v. Astrue, 500 F.3d

741, 745 (8th Cir. 2007). Such an opinion "invades the province of the Commissioner to make the ultimate disability determination." Id.

The Court finds that the treatment notes, letter, and MSS from Ms. Uptegrove-Ryan would not have changed the ALJ's decision regarding Plaintiff's RFC. The administrative record before the ALJ contained Ms. Uptegrove-Ryan's treatment notes from November 2013 through December 2015. The ALJ's decision reflects that he thoroughly reviewed and considered Ms. Uptegrove-Ryan's earlier treatment records when formulating Plaintiff's mental RFC. The new treatment notes from December 2015 through February 2016 added little to the larger picture of Plaintiff's mental health. They revealed that Plaintiff reported continued anxiety, depression, and poor sleep. In other words, the Plaintiff's mental health condition remained unchanged.

Moreover, Ms. Uptegrove-Ryan's treatment notes revealed that Plaintiff's feelings of depression were generally tied to situational factors, such as conflict with her husband and financial difficulties. "Situational depression does not support a finding of disability." Moss v. Berryhill, No. 5:16-CV-6127-NKL, 2017 WL 2364407, at *8 (E.D. Mo. May 31, 2017) (citing Tindell v. Barnhart, 444 F.3d 1002, 1007 (8th Cir. 2005)). See also Dunahoo v. Apfel, 241 F.3d 1033, 1039-40 (8th Cir. 2001) (depression resulting from denial of food stamps and workers compensation was situational and not disabling); Cook v. Berryhill, 1:15-CV-182-NCC, 2017 WL 1132342, at *7 (E.D. Mo. March 27, 2017) (situational depression is not disabling); Shipley v. Astrue, No. 2:09-CV-36-MLM, 2010 WL 1687077, at *12 (E.D. Mo. April 26, 2010) (same).

The Court's review of the administrative record, including the new evidence provided to the Appeals Council, establishes that substantial evidence supported the ALJ's mental RFC. Moreover, the Court concludes that if the ALJ had received the new evidence during the hearing, he would have reached the same conclusion.

14

*VIII.   Conclusion*

For the reasons stated above, the Court finds that substantial evidence in the record as a whole, including the new evidence submitted to the Appeals Council, supports the ALJ's conclusion that Plaintiff is not disabled. Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying Social Security benefits to Plaintiff is **AFFIRMED.**

A separate judgment in accordance with this Memorandum and Order is entered this date.

/s/ Patricia L. Cohen
_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 6th day of August, 2018